## WRIGHT v. KEITHLER.

A statement of testimony offered on the trial of a cause, and excluded by the court, should be made in such terms as to leave nothing to be supplied in order to show its relevancy, or .the error of the court in excluding it.

In the appellate court it will be presumed that the statement of evidence offered on the trial, and excluded by the court, is made by the party in terms as strong as the facts will justify; and whether it is so done or not, the statement will be taken most strongly against the party by whom it is made.

Where in an action of right, it appeared from .the record, that the defendant offered to prove, that "himself and those under whom he claimed, had had actual and continued possession of the land described in the petition, for more than ten years prior to the commencement of the suit," which testimony was objected to by the plaintiff, and excluded by the court; Held, 1. That the testimony, if admitted, would not, in the terms in which it is stated, have constituted a defence to the action; 2. That even if the offer was intended as an attempt to show that the defendant had had ten years uninterrupted adverse possession of the premises before suit brought, the evidence, if admitted, would not have been sufficient to defeat the plaintiff's right of action.

As the limitation of possessory actions is not enlarged, but diminished, by the Code, the plaintiff in an action of right, is allowed not less than five years. after the time the Code took effect, within which to commence his action, provided the five years does not extend the time beyond the previous limitation of twenty years.

Phares v. Walters, 6 Iowa, 106, so far as it holds, that an action for the recovery of possession of real estate, where the cause of action accrued prior to the taking effect of the Code, would not be barred short of ten years after the Code took effect, is overruled.

In an action of right, for the recovery of possession of real estate, a defendant cannot be permitted to impeach a decree of partition, on the ground of fraud against his grantor, or third persons, of which they have not themselves complained, and to which decree he was not himself a party.

*Appeal from the Lee District Court.*

FRIDAY, OCTOBER 22.

This was an action under the Code, (ch. 116) for the recovery of real property. The petition is in the usual form. The defendant by his answer, averred that if the plaintiff had any title to the land in controversy, it was based upon, and derived from, a certain decree of partition, made in the district court of Lee county, Territory of Iowa, on the 8th of May, 1841, in a certain suit therein tried and determined, wherein *Josiah Spaulding* and others, were plaintiffs, and *Euphrosine Antaye* and others, were defendants; and that said decree of partition was illegal, fraudulent, and void. A demurrer to this answer was sustained by the court. The defendant then put in a general denial of the plaintiff's petition, on which issue was joined. Exception was taken on the trial, to the refusal of the court to permit certain evidence, offered by the defendant, to be given to the jury, which will be found stated in the opinion of the court. Judgment for the plaintiff, and defendant appeals.

*F. Semple,* for the appellant.

*S. F. Miller* and *Charles Mason,* for the appellee.

STOCKTON, J.—The defendant offered to prove, "that himself, and those under whom he claimed, had had actual and continued possession of the land described in the petition, for more than ten years prior to the commencement of the suit." This testimony was objected to by the plaintiff, and excluded by the court.

Would the testimony, if admitted, have constituted a good defence to the action? In the terms in which it is stated, we think it would not. It is not stated that the testimony offered, would have shown an adverse possession; and it must have been an adverse actual possession in defendant, and those under whom he claimed, in order to be

available as a valid defence to the action.   For aught that appears to the contrary in the offer made, the possession relied on may have been that of a tenant, or in some other manner not inconsistent with the plaintiff's rights. ·

. The statement of the testimony offered, should have been made in such terms  as to leave nothing to be supplied, in order to show its relevancy, or the error of the court in excluding it.   It will be presumed that the statement is made by the party, in terms as strong as the facts will justify; and whether it is so done or not, the statement will be taken most strongly against the party by whom it is made.   But even if we are to take it as an offer by the defendant, to show that he had had ten years uninterrupted adverse possession of the premises, before suit brought, the evidence, if admitted, would not have been sufficient to defeat the plaintiff's right of action.

By the act of February 15th, 1843, the action of right, and all possessory actions, were limited to twenty years. The Code reduced the period of limitation to ten years, and applied it to causes of action already accrued, and not barred at the time of its taking effect ; allowing, however, not less than five years from the 1st of July, 1851, for commencing action in such cases ; provided that in cases where the period of limitation is not enlarged by the Code, the time allowed for the commencement of the suit, shall in no case exceed that fixed by the statute previously in force.

As the limitation to  possessory actions is not  enlarged, but is diminished, by the Code, the plaintiff is allowed by it, not less than five years after the time of its taking effect, within which to commence his action, provided the five years does not extend the time beyond the previous limitation of twenty years.   But little more than eight years had been running against the plaintiff, when the Code took effect.   He was entitled to five years after its taking effect, within which to bring his suit.   This gave him until July 1st, 1856.   The action was commenced, by the delivery of the original notice to the sheriff, June 26th, 1856 ; consequently the same was not barred by the statute of limitations.

The construction given above to the statute of limitations, as embraced in chapter 99, of the Code, is, in some respects, different from that placed upon it by this court in *Phares* v. *Walters*, 6 Iowa, 106. So far as the interpretation here given to the statute, as to the time allowed after the taking effect of the Code, for the commencement of suits in possessory actions, is in conflict with the rule established in *Phares* v. *Walters*, that case must be understood as over-ruled. Subsequent reflection and examination, have led us to the conclusion, that in deciding that the complainant in that case was entitled to ten years after the taking effect of the Code, within which to commence her action, we were in error. The various reasons which have led us to this conclusion, it is not now necessary to state, as the full detail thereof is not requisite to the determination of the present cause.

The defendant also offered to prove, that since the 11th of March, 1854, he had been the owner of an interest in the Half Breed Tract, derived from Francois Hebert, a half-breed, sufficient to cover the land and premises in controversy; that one half of the share of said Hebert, had been allowed to her vendee in the decree of partition; that the other half-share was not provided for by the same; and that at the date of the suit and proceedings in partition, the said Hebert was a non-resident of the territory of Iowa, and had no notice of the same. This evidence was also objected to by the plaintiff, and excluded by the court.

The decree of partition was made in May, 1841. The defendant acquired his supposed title to the half-share of Francois Hebert, in the Half-Breed Tract, disallowed by the decree, in March, 1854, nearly thirteen years after the final disposition of the suit. If there was fraud in the procurement, or in the operation of the decree of partition, it was a fraud upon the rights of Francois Hebert, the grantor of defendant, and she has not complained, or sought any redress against it. As she has not seen proper to do so, the question is made, whether the defendant, as her grantee, can be permitted to set up this fraud.

This question may be considered as settled by the decision in *Finch* v. *Shotwell*, 5 Johnson Ch., 565, in which it is said: "If the party himself, who is the victim of the fraud, chooses to waive his remedy, and release the party, it does not belong to a subsequent purchaser under him, to recall and assume the remedy for him. If a judgment was fraudulent by collusion between the parties to it, on purpose to defraud a subsequent purchaser, the case would present a very different question. But if the judgment was fraudulent only as between the parties, it is for the injured party alone to apply the remedy. If he chooses to waive it, and discharge the party, it cannot consist with justice or sound policy, that a subsequent voluntary purchaser, knowing of that judgment, should be competent to investigate the merits of the original transaction as between the original parties. Feuds and litigation would be interminable, if any distinct purchaser of distinct parcels of land, affected by a judgment existing and known, when they became interested, could overhaul the judgment upon an allegation of usury, extortion or fraud, practiced upon their principal, the vendor, when he himself chooses to acquiesce in the alleged injury, or has expressly waived all complaint. It is stated to have been a principle of the common law, that a fraud could only be avoided by him who had a prior interest in the estate affected by the fraud, and not by him who, subsequently to the fraud, acquired an interest in the estate." *Upton* v. *Bassett*, Cro. Eliz., 445; 3 Coke, 83, *a*. If the defendant can be permitted to impeach the decree of partition, causes of action, (in the language of KENT, Chancellor, in same case), might be said to become negotiable, and to be capable of subdivision to any degree, and susceptible of re-litigation to any extent. The doctrine of the above cited case, has been expressly recognized and approved by this court, in *Brace* v. *Reid*, 3 G. Greene, 422.

The remaining testimony offered by the defendant, and excluded by the court, was for the purpose of showing that the decree of partition was procured by fraud; and

that it operated as a fraud upon the rights of persons al-
leged to have been interested as owners of the Half Breed
Tract. The defendant, we think, has not shown himself
to be in a position to entitle him to rely upon either of
these facts, as a defense to the action. He was not a par-
ty to the decree; he was not interested in the Half Breed
Tract at the time it was rendered. However great might
have been the fraud practiced, in the procurement of the
decree of partition, it was no fraud upon him. We have
felt constrained to hold, that as Francois Hebert, the half
breed, under whom he claims by purchase since the de-
cree, has not, in any manner, questioned its fairness, or va-
lidity, the defendant cannot be permitted to question it for
her. Much more, we think, can he not be permitted to
plead, as a defense to this action, a fraud practiced upon
third persons, under whom he does not claim. These
third persons, if they had deemed it expedient, might have
impeached the decree for the alleged fraud, and taken
measures to have it set aside. The defendant cannot,
however, avail himself of the fraud upon them as a de-
fence to this action.

Judgment affirmed.