## KILBOURNE *v.* LOCKMAN.

To constitute an adverse possession, it is not essential that the possession should be in the party personally and solely, in order to enable him to plead it in an action of right, but it is sufficient if it be in him, and those through whom he derives title—they claiming title.

To any action of right, or action brought to recover real estate, commenced after the first day of July, 1856, the period of ten year's limitation is a bar.

The Code makes ten years the limitation in actions for the recovery of real estate, but where the cause of action had accrued before, section 1672 allowed the plaintiff one-half that time, or five years after the Code took effect, with the qualification (by section 1673), that he should not have more time in all than was allowed by the pre-existing law—that is, that only so much of the five years was allowed as would make the twenty years, but it could, in no case, go beyond the twenty years.

Where in an action of right, the defendant pleaded, *First*. An adverse possession in himself, and those under whom he claimed, for ten years prior to the commencement of the suit ; and, *Second*, That the plaintiff had not brought his action within ten years from the time when his right of action accrued, to which pleas a demurrer was sustained ; *Held*, That the court erred in sustaining the demurrer.

Where in action of right to recover a town lot, which formed a portion of the lands known as the " Half Breed Tract," the defendant pleaded that he held under one J. A., a genuine half-breed, who was entitled, as such, to an interest in said lands, but whose right and claim was not adjudicated in the partition suit decided in 1841, nor at any other time ; to which plea a demurrer was sustained ; *Held*, That the plea did not show where the defendant derived his title, nor why the interest of J. A. was not adjudicated, and was bad.

In an action of right, the defendant cannot set up in his answer a *supposed* ground of claim for the plaintiff, and plead to it himself, and put the plaintiff to the necessity of pleading to it also.

*Appeal from the Lee District Court.*

SATURDAY, APRIL 23.

THE plaintiff sued for the possession of lot number eleven, in block number thirty-three, in the city of Keokuk, claiming title in fee.   This lot is a part of the lands known as the " Half Breed Tract."   The judgment was against the

Kilbourne v. Lockman.

defendant, who appeals. The material facts in the case, and the errors assigned, sufficiently appear from the opinion of the court.

*Charles Mason*, (with whom was *E. C. Moss* and *Baldwin*), for the appellant, cited *Piatt* v. *Vattier*, 1 McLean, 156; *Blackford* v. *Peltier*, 1 Blackf., 36; *Sturgis* v. *Crowninshield*, 4 Wheat., 207; *Ruggles* v. *Keeler*, 3 Johns., 263.

*Lowe, Noble & Craig*, for the appellee, cited Stephens on Pleading, 341; 1 Chitty on Pleading, 224; 1 Ib., 539; 8 Ohio, 108; 22 Maine, 130; 3 Johns., 168: 4 Scam., 371; *Heffner* v. *Walsh*, 4 G. Greene, 509; *Brace* v. *Reed*, 4 Ib., 422; *Johnson* v. *Carson*, 4 Ib., 501; *Barney* v. *Chittenden*, 2 Ib., 167; *Wright* v. *Millard*, 3 Ib., 86; *Kerr* v. *Leighton*, 2 Ib., 196; *Wright* v. *Marsh et al.*, 2 Ib., 94; *King* v. *Smith*, Rice, (South Car.), 11; *Beadle* v. *Hunter*, 3 Strobh., 331; 2 Smith's Lead. Cases, 493; *Phares* v. *Walters*, 6 Iowa, 106.

WOODWARD, J.—The questions in the case, arise on demurrers to the defendant's pleas or answers, and these will be noticed according to their subject matter.

The defendant's first answer, is a denial of the plaintiff's right, and he assigns as error, that judgment was rendered without a trial upon this, although the plaintiff replied, taking issue. The answer to this is, that the record entry states, that after the disposition of the demurrers, the cause was submitted to the court, who found that the defendant did detain the possession, and that the plaintiff had the right both of possession and of property.

By the third count in the answer, the defendant pleads an adverse possession in himself, and those through whom he claims, of ten years, and by the fourth, that the plaintiff has not brought his action within ten years from the time when his right of action accrued.

It is not essential, as is urged by the plaintiff, that the

possession should be in the defendant personally and solely, in order to enable him to plead it, but it is sufficient if it be in him and those through whom he derives title, they claiming title.

We are to determine whether the period of ten years, is a limitation upon the plaintiff in his action, and also whether the court can declare it to be, or not to be, such, when it does not appear at what time the plaintiff's cause of action accrued.  We believe we can answer both of these questions in the affimative.

Two circumstances are to be noticed : *First.* That it does not yet appear in the case, when the plaintiff's cause of action accrued.  *Second.* The action was commenced on the 22d of August, 1857.  In one of the defendant's answers, in which he sets up a title for the plaintiff, and then pleads to it, he alleges that it accrued on the third of May, 1841, but this is not sufficient to rely upon, in determining the question of limitation.

To any real action, or action brought to recover real estate, commenced after the first day of July, A. D. 1856, the period of ten years limitation, is a bar.  The question of the limitation of actions, under the statute called the Code, has been, and in some cases may still be, determined upon a changing scale.  The Code makes ten years the limitation in this class of actions ; and this is applied to causes then existing ; but when the cause of action had accrued before, section 1672 allowed the plaintiff half that time, (or five years), after that law took effect, with this qualification, (section 1673), namely, that he should not have more time in all, than was allowed by the pre-existing law, or twenty years, in real actions—that is, only so much of the five years was allowed, as would make the twenty years, but it could in no case go beyond twenty. Then ten years was the limitation, but if the cause of action arose before the Code took effect, the plaintiff had five years after it, but no more.

To illustrate, we will suppose one or two cases.  Suppose the action accrued on the first of May, 1834.  The plaintiff

would have the five years after the Code took effect, so it did not give him more than twenty years in all. Therefore, he would have until the first of May, 1854, and not longer. Again : Suppose his cause arose on the first of May, 1844. This being before the Code, he has five years after it to commence, or till the first of July, 1856, and no more, and this is but twelve years, and a little over. In these cases, the plea of ten years limitation, or adverse possession, would not form a bar.

Different periods have been allowable in different cases, depending upon the time when the cause of action arose. The equality of the rule, in respect to past causes of action, consisted in giving them the same length of time after the Code took effect, limiting them to twenty years only. The half of the period prescribed as a limitation in the Code, (or the five years), having now elapsed, that time has no influence in the reckoning, when the action was commenced after it had passed. That period expired on the first of July, 1856, and the plaintiff has had the benefit of it to commence his action, and not having brought it within that time, the only question is, whether he has begun within ten years after his right accrued. The action was brought on the 22d of August, 1857.

From the above, it is apparent, that if he has not brought his action within ten years after the accruing of his right, he is barred. Consequently, the defendant's answer, that he did not bring his action within ten years from the accruing of the right, or that the right arose more than ten years before the commencement of the action, is a good plea in bar. And for the same reason, the plea of adverse possession for that length of time, prior to the bringing of the suit, is also a valid plea. It follows, of course, that the demurrer to these two counts in the answer, should have been overruled. See *Wright* v. *Keithler*, 7 Iowa, 92 ; *Gillis* v. *Black*, 5 Ib., 439 ; *Montgomery* v. *Chakwick*, 7 Ib., 114.

The above determination would dispose finally of the

cause, but there are one or two other points which should be noticed.

The defendant withdrew the second and seventh counts of his answer, and as a substitute for the seventh, pleaded his ninth count, which is, that he holds under one Isaac Antaya, a genuine half-breed, who was entitled, as such, to an interest in said lands, but whose right and claim was not adjudicated in the beforementioned partition suit, decided in 1841, nor at any other time. It is quite manifest to a legal mind, that there might be several adequate causes or reasons, why this interest may not have been adjudicated, consistently with the supposition of its actual existence, and according to the decision in the case of *Wright* v. *Keithler*, *supra*, it might be important that the relative period of the plaintiff's acquisition of title, should appear; but in this answer he sets forth none of the facts and circumstances, showing either when he derived title under Antaya, nor why the interest or claim of the latter was not heard. The answer does not show that this claim was presented, nor that Antaya, or the defendant, as his grantee, was fraudulently excluded—nothing is stated as a reason why the decree should be opened, save the unexplained fact that the interest was not adjudicated. The demurrer was correctly sustained.

The fifth, sixth, and eighth counts of the answer, aver that if the plaintiff has any title, it is only one based upon, and derived from, the judgment in partition of the 8th of May, A. D. 1841, commonly known as the suit for the partition of the Half-Breed lands; and allege that the said judgment and the proceedings in the said action, were, and are null, void, and of no effect; and then the pleadings proceed respectively, to state many facts, causes and reasons, why the same are, and should be held to be, so null, void, and of no effect, among which are several averments of fraud, and fraudulent representations and practices, on the part of those who conducted and managed the cause, and those who obtained the judgment. The plaintiff demurred,

Kilbourne v. Lockman.

and assigned several causes, among which he objects that these answers set up matters of evidence only, not yet offered, but anticipated by the pleaders; that the defendant can not thus suppose a basis of the plaintiff's claim, and plead to it; that the court cannot, in this action, take cognizance of these matters; and that the pleadings set up the supposed invalidity of a decree, or judgment, of the district court, which he cannot thus do.

The pleas, or answers, are bad, for the reason first above assigned.    In the case of *Gillis* v. *Black*, 6 Iowa, 439, it was held, that the defendant could not set up a supposed, or presumed, ground of claim for the plaintiff, and then plead to it himself, and put the plaintiff to the necessity of pleading to it also.    A moment of reflection will show, that such a course could lead to no useful end, but only to immaterial and absurd issues.    But if the party came into a position where he could either properly plead, or offer in evidence, facts rendering a judgment void for fraud, or could show it void on its face, this would present a different state of things, and a different question.    The supreme court of the United States held, that if a judgment be set up in a collateral action, against a party who had not an opportunity to plead to the action in which it was recovered, it may be avoided by proof of fraud, or may be shown to be void on its face.    *Webster* v. *Reid*, 11 How., 437; 18 Curtis, 678.

It is believed that these remarks cover all of the defenses and questions made in the cause.    For the error before named, the judgment of the district court is reversed, and a writ of *procedendo* will issue to that court, with directions to proceed in a manner consistent with this opinion.

Judgment reversed.