SULLIVAN v. DAMON et al.

(Circuit Court of Appeals, Eighth Circuit. March 20, 1916. Rehearing Denied May 25, 1916.)

No. 4505.

LIMITATION OF ACTIONS ☞105(1)—COMPUTATION OF PERIOD—PENDENCY OF OTHER ACTION.

 The Iowa 10-year statute of limitations (Code Iowa 1897, § 3447), which has been construed by the Supreme Court of that state to run only in favor of one in possession under some claim of right or color of title, which he in good faith supposes gives him his right to the property, does not run against the one holder of the legal title during the pendency of a suit by the one in possession to have the title holder declared trustee for him in which suit the final decree was against the claimant in possession.

 [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 514; Dec. Dig. ☞105(1).]

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Ejectment by Albert N. Damon and others against John Sullivan. Judgment for plaintiffs (218 Fed. 526), and defendant brings error. Affirmed.

Alfred Pizey, of Sioux City, Iowa (D. H. Sullivan, of Sioux City, Iowa, on the brief), for plaintiff in error.

John E. Stryker, of St. Paul, Minn., for defendants in error.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

ADAMS, Circuit Judge. This was a suit in ejectment, brought by defendants in error, who were the sole heirs of Myron H. Damon, deceased, to recover possession of a tract of land situated in O'Brien county, Iowa, patented to their ancestor in 1901. After the issuance

of the patent to him, some time in 1903 Sullivan (the plaintiff in error) commenced a suit in equity in the court below against the patentee, asserting that he, by his settlement upon the land in question under the homestead laws of the United States prior to the issuance of the patent to Damon, had acquired title to it, and that through error of law the patent had been issued to Damon, when it should have been issued to him, and his prayer was that Damon (the defendant in that suit) should be decreed to hold the legal title in trust for him (Sullivan). During the pendency of that suit Myron H. Damon died, and some time in 1912 the suit was revived against the defendants in error as his heirs at law. In 1913, after a full hearing, a final decree was entered dismissing the bill on the merits, and awarding the land to the defendants in error as the surviving heirs of the patentee. Sullivan v. Damon (D. C.) 202 Fed. 285.

The defendant Sullivan was in possession of the land during the pendency of the equity suit, and upon his refusal to surrender its possession plaintiffs brought this suit to recover it from him. In their petition plaintiffs set forth, among other things, the claim which Sullivan had asserted to the land, and the facts relating to the bringing of the equity suit by him, and the entry of the final decree therein. Defendant, Sullivan, in his substituted and amended answer, admitted that he brought the equity suit, contesting the validity of the Damon patent as against his homestead claim, and that final decree was entered therein against him; but he alleged that no issue relating to his claim of title by adverse possession was there tried, and that the only issue there involved was whether the land department of the United States had erred as a matter of law in issuing the patent to Damon instead of to him. He further alleged that his equity suit was commenced on February 20, 1901, and that he had been for years prior thereto in the actual, open, hostile, notorious occupancy and possession of the land adverse to and exclusive of any and every other right or claim; that his possession continued for more than 10 years after the commencement of that suit, during which period of time neither Myron H. Damon nor his heirs (plaintiffs herein) brought any action for the recovery of the real estate, or the possession thereof, nor took any steps to bring the equity suit to trial; that by such acquiescence and laches any right, title, or interest which plaintiffs may have had in the land has been abandoned and lost, and barred of remedy by the statute of limitations of 10 years. A demurrer filed to this answer was sustained by the trial court, and, defendant declining to plead further, judgment was rendered against him, for the reversal of which this writ of error is prosecuted.

The defendant makes these assignments of error:

"(1) That the court erred in sustaining the demurrer to the amended and substituted answer filed in this cause, for the reason that the statements and allegations contained in said answer pleading title in this defendant and plaintiff in error to the real estate in controversy by adverse possession and the statute of limitations, state a good and valid defense to the petition of the plaintiffs."

"(2) That the court erred in entering final judgment in this cause against this defendant and plaintiff in error and in favor of the plaintiffs for the same reason."

This case is thus simplified and reduced to the question whether the Iowa statute of limitations (section 3447, Code Iowa 1897), which requires the bringing of an action for the recovery of real estate within 10 years after the cause of action accrues, was tolled in favor of the plaintiffs in this case during the pendency of the equity suit. If so, inasmuch as that was for a period in excess of 10 years before this action was brought, the defendant's title based on adverse possession cannot prevail.

The Supreme Court of Iowa, in decisions relating to its local statutes, which are binding upon federal courts, has held that, in order to enable a party to rely on the statute of limitations, he must be in the actual adverse possession under a claim of right or under a color of title. Larum v. Wilmer, 35 Iowa, 244; Hintrager v. Smith, 89 Iowa, 270, 56 N. W. 456; Litchfield v. Sewell, 97 Iowa, 247, 66 N. W. 104; Goulding v. Shonquist, 159 Iowa, 647, 141 N. W. 24. See also to the same effect St. Paul M. & M. Ry. Co. v. Olson, 87 Minn. 117, 91 N. W. 294, 94 Am. St. Rep. 693.

In Goulding v. Shonquist, supra, the Supreme Court said:

"These words 'claim of right' or 'claim of title' are often used in the same sense. It is difficult to give an exact definition that would be applicable in all cases, but there must be some claim of right or title or interest in or to the property by which the possessor, in good faith, supposes he has a right to the property, and under which he continues in possession, and which, when held openly for the requisite length of time, with the intention of holding against the true owner and all others and adversely, will ripen into a title."

In view of these authorities, and others of like character, the trial court held that the equity suit instituted by Sullivan in 1903, and prosecuted to a final decree against him in 1913, presented a fatal obstacle to his title by adverse possession. To this contention, after examining and considering the foregoing cases and many others to which our attention has been called by counsel in the case, we feel constrained to agree.

It is inconceivable that Sullivan, at the time this suit was instituted in September, 1914, or for some time prior thereto, when, as he claims, the statute was running against plaintiffs' cause of action, could have believed, in good faith, that he had a claim or color of title to the land. The decree in the equity suit had, in a most solemn way, advised him that he had no such claim or color of title, and the pendency of that suit from 1903 to 1913, during which time the present plaintiffs were contesting his pretensions in the only permissible way, affords very conclusive assurance that these plaintiffs were not acquiescent in Sullivan's claim. In Litchfield v. Sewell, supra, 97 Iowa, loc. cit. 251, 66 N. W. 104, the Supreme Court of Iowa said (citing in support Washburn's Real Property):

"The whole doctrine of adverse possession rests upon the presumed acquiescence of the party against whom it is held."

During this period of 10 years the plaintiffs in this case were defending their claim of ownership of the property against Sullivan whenever the progress of the equity suit permitted them to do so. To now hold that the statute of limitations was running against plaintiffs

during the pendency of that suit would, in effect, permit Sullivan to make use of its protraction, presumably within his own control, to accomplish for him what the suit itself failed to do. Such a holding would offer a premium to protracted litigation, and convert merited defeat into unmerited victory.

The judgment of the District Court was right, and must be affirmed.